FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 NOV -6  PM 4: 50

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| EDWARD BURBEL, SHELBY COLEMAN, SR., ALFRED GASTON, LEE A. GOOSEBERRY, CALVIN HORTON, JR., EDWARD JACKSON, MARIE McBRIDE, CYNTHIA SMITH, MELFORD SWAIN, JR., JEWEL THIRSTY, JANE WALKER, MARSHALL WATTS AND FLORISKA WILLIAMS | CIVIL ACTION NUMBER_____<br><br>**01-3355**<br><br>COMPLAINT - CLASS ACTION<br><br>**SECT. D MAG. 5** |
| VERSUS | DEMAND FOR JURY TRIAL |
| SMITHKLINE BEECHAM CORPORATION, GLAXOSMITHKLINE, INC., AMERICAN HOME PRODUCTS CORPORATION, BAYER CORPORATION, A SUBSIDIARY OF BAYER, A.G., BRISTOL-MYERS SQUIBB COMPANY, CHATTEM, INC., NOVARTIS CORPORATION, NOVARTIS CONSUMER HEALTH, INC., AND NOVARTIS PHARMACEUTICALS CORPORATION | SECTION "_____"<br><br>MAGISTRATE_____ |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes complainants, Edward Burbel, Shelby Coleman, Sr., Alfred Gaston, Lee A. Gooseberry, Calvin Horton, Jr., Edward Jackson, Marie McBride, Cynthia Smith, Melford Swain, Jr., Jewel Thirsty, Jane Walker, Marshall Watts and Floriska Williams, who respectfully represents that they have injuries common to all those similarly situated, all of whom incurred damages arising out of the use of over the counter medications containing Phenylpropanolamine ("PPA"). Complainants seek to represent and prosecute all claims through class action proceedings against the defendants named herein for the class of persons similarly situated in the United States of America for the following reasons:

-1-



Fee 150.00
Process ___
X Dktd ___
CtRmDep ___
Doc.No. 1

1.

This Court has subject matter jurisdiction pursuant to 28 U. S. C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by individuals and a representative complainant who are citizens of a different state than the defendants.

2.

Venue is proper in this district pursuant to 28 U. S. C. § 1391. Complainant purchased medications that form the basis of this lawsuit in the Middle District of Louisiana. Defendants advertised in this district, received substantial compensation and profits from sales of the medications in this district, and made material omissions and misrepresentations and breached warranties in this district.

3.

The complainants and proposed class representatives, appearing individually and on behalf of all those similarly situated, are Edward Burbel, Shelby Coleman, Sr., Alfred Gaston, Lee A. Gooseberry, Calvin Horton, Jr., Edward Jackson, Marie McBride, Cynthia Smith, Melford Swain, Jr., Jewel Thirsty, Jane Walker, Marshall Watts and Floriska Williams.

4.

Defendants are the manufacturers, marketers, wholesalers, distributors and/or sellers of various medications which contain PPA. Made defendants are:

    A.    Smithkline Beecham Corporation (hereinafter "Smithkline" or "manufacturer/defendant") is a Pennsylvania corporation whose registered agent for service of process is Corporation Service Company, 320 Somerulos, Baton Rouge,

Louisiana 70802-6129; and Glaxosmithlkine, Inc. (hereinafter "Glaxo") is a Pennsylvania corporation with its principal place of business at One Franklin Plaza, Philadelphia, Pennsylvania 19102-1223, who at all relevant times hereto were designers, manufacturers, marketers, advertisers, distributors, and seller of Contac, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which contained PPA as an active ingredient. Contac was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

B. American Home Products Corporation (hereinafter "American Home Products") is a Delaware corporation whose agent for service of process is Corporation Service Company, 80 State Street, Albany, New York 12207-2543, who at all relevant times hereto was designer, manufacturer, marketer, advertiser, distributor, and seller of Robitussin CF, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which contained PPA as an active ingredient. Robitussin CF was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

C. Bayer Corporation, a subsidiary of Bayer A.G., (hereinafter "Bayer Corporation" and/or "manufacturer defendant"), is an Indiana corporation whose agent for service of process is CT Corporation System, 8550 United Plaza Blvd., Baton Rouge, Louisiana 70809, who at all relevant times hereto was designer, manufacturer, marketer, advertiser, distributor, and seller of Alka Seltzer Plus, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which

       contained PPA as an active ingredient. Alka Seltzer Plus was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

D.     Bristol-Myers Squibb Company, is incorporated under the laws of the State of Delaware whose registered agent for service of process is CT Corporation System, 11 Eight Avenue, New York, New York 10011, who at all relevant times hereto was designer, manufacturer, marketer, advertiser, distributor, and seller of Comtrex, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which contained PPA as an active ingredient. Comtrex was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

E.     Chattem, Inc. (hereinafter "Chattem"), is incorporated under the laws of the State of Tennessee whose registered agent for service of process is Hugh F. Sharber, 1000 Volunteer Bldg., 832 Georgia Avenue, Chattanooga, Tennessee 37402, who at all relevant times hereto was designer, manufacturer, marketer, advertiser, distributor, and seller of Dexatrim, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which contained PPA as an active ingredient. Dexatrim was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

F.     Novartis Corporation, a corporation with its principal place of business in New York, who at all relevant times herein, Novartis Corporation was in the business of promoting, manufacturing and distributing products containing Phenylpropanolamine. Defendant does business in the State, and this federal district, and at all relevant times hereto, marketed, promoted, warranted and sold their

    products containing PPA in this State, in interstate commerce and throughout the United States. Novartis Consumer Health Inc., a corporation with its principal place of business in New Jersey, who at all relevant times herein, Norvartis Consumer-Health, Inc. was in the business of promoting, manufacturing and distributing products containing Phenylpropanolamine. Novartis Consumer Health, Inc. was in the business of promoting, manufacturing and distributing products containing Phenylopropanolamine. Novartis Consumer Health, Inc. does business in Washington and throughout the United States. Novartis Pharmaceuticals Corporation, a corporation with its principal place of business in New Jersey, who at all relevant times herein, Novartis Pharmaceuticals Corporation was in business of promoting, manufacturing and distributing products containing Phenylpropanolamine. Novartis Pharmaceuticals Corporation does business in Washington and throughout the United States. At all relevant times hereto, Defendants were designers, manufacturers, marketers, advertisers, distributors, and sellers of Tavist-D, a non-prescription, over the counter cold, flu and allergy remedy pharmaceutical product, which contained PPA as an active ingredient. Tavist-D was purposefully and regularly distributed, marketed, advertised and sold throughout the United States.

G.    ABC Corporations, which is the fictitious name of designers, manufacturers, marketers, advertisers, distributors and/or sellers of non-prescription, over the counter cold, ful and/or allergy remedy pharmaceutical products, which contained

PPA as an active ingredient. The identities of these corporations will be substituted for the fictitious name used herein as soon as the same is ascertained

5.

The proposed class representatives and named complainants herein seek to represent the following class:

> "All residents and domiciliaries of the United States of America and their spouses who have used medication containing PPA, which was manufactured, distributed, sold and/or placed into the stream of interstate commerce by defendants, and : (a) who have sustained any injury or damage thereby, or (b) who may suffer such injury or damage in the future as a result thereof, or (c) who have sustained a justifiable fear of sustaining such injury or damage in the future as a result thereof."

6.

Complainants suffered heart attacks, strokes, and other serious and debilitating diseases after taking medications containing PPA.

7.

The medications were widely sold, distributed, promoted and advertised by the named defendants as effective cold and flu remedies.

8.

The defendants directly or indirectly manufactured, distributed, marketed, advertised and sold the medications containing PPA.

9.

The defendants either knew or should have known that the medications had been associated with severe and life threatening complications including but not limited to stroke and blood pressure

elevation.

10.

The defendants failed to adequately warn plaintiffs of the hazards of the use of the medications and conspired to conceal and did conceal this knowledge from the plaintiff and others.

11.

Defendant permitted the medications to be advertised, marketed, distributed and sold without adequate warnings of the serious side effects and dangerous risks.

12.

The actions of the defendants are ongoing and constitute ongoing and continuous torts.

13.

Defendants are liable to complainants and the complainant class under the theories of strict liability, strict products liability, defective product design, defective product composition, failure to adequately warn, negligence, fraudulent misrepresentation and concealment, breach of implied and express warranties and reasonable attorneys' fees where applicable.

14.

Complainants and the proposed class live in the fear that, as a result of their ingestion and use of medications containing PPA, they are subject to an increased risk of contracting liver disease and other disabling injuries, and consequently, are entitled to medical monitoring at the expense of defendants.

15.

Defendants have failed to properly and adequately test the medications containing PPA to

determine the potential adverse health effects.

16.

Defendants have failed to adequately warn consumers of the harmful side effects and potential adverse health effects of medications containing PPA.

17.

As a result of their ingestion and use of medications containing PPA, complainants and the proposed class sustained damages, as follows:

  A.   Stroke, atrial arrhythmia, severe elevation of blood pressure
  B.   Disability.
  C.   Past and future emotional distress.
  D.   Loss of enjoyment of life.
  E.   Inconvenience.
  F.   Past and future physical pain and suffering.
  G.   Physical pain and suffering.
  H.   Increased risk of contracting disease.
  I.   Need for medical monitoring.

18.

The medical monitoring that complainants and the complainant class are entitled to includes, but is not limited to, testing, preventive screening, care and treatment of the resultant medical conditions.

19.

The proposed class is so numerous that joinder of all members is impractical. Millions of units of medications containing PPA have been sold to the public. The actual number of individuals who or which will elect to maintain their claims through this litigation will better be established at

the notification to all absentees that this action is pending. However, the class is believed to number in the thousands of persons.

20.

The questions of law and fact arising out of the claims made by the proposed class are common and include, but are not limited to, establishing facts to resolve the following questions of law:

- A. Whether medications containing PPA were defective.
- B. Whether the medications containing PPA caused or contributed to adverse medical conditions suffered by the class.
- C. When the defendants knew or should have known that the aforementioned medical problems were associated with the medications containing PPA.
- D. Whether testing and research was adequate and responsible.
- E. Whether medications containing PPA are unreasonably dangerous.
- F. Whether defendants were negligent in failing to warn or give adequate warnings.
- G. Whether defendants' failure to give adequate and timely warnings constitute negligence per se.
- H. Whether defendants breached implied warranties in conjunction with the manufacture, marketing, sale and distribution of medications containing PPA.
- I. Whether defendants breached express warranties in conjunction with the manufacture, marketing, sale and/or distribution of medications containing PPA.
- J. Whether defendants concealed or misrepresented information from complainant and the complainant class regarding the testing, safety and efficacy of medications containing PPA.
- K. Whether defendants continued to sell medications containing PPA after they knew or should have known of the defects, injuries, and risks associated with its use.
- L. Whether defendants are strictly liable to those injured by medications containing PPA.
- M. Whether defendants are liable for punitive or exemplary damages.
- N. Whether defendants are liable for attorneys' fees.

21.

The claims of the proposed class representatives are typical of the claims of the proposed class.

22.

Complainants will fairly and adequately represent and protect the interests of all members of the described class. Complainants have retained attorneys experienced in the prosecution of class actions, including complex product liability litigation and mass tort class actions.

23.

The common questions of law and fact as shown above predominate over individual questions of causation or individual damages.

24.

Concentrating this litigation in one forum will aid with judicial economy, consistency and efficiency and will promote parity among the claims of individual class members.

25.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class is impracticable. Even if any class members could afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by defendant' product. By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Thousands of individual actions will create unnecessary burdens on and delay to injured victims in addition to straining the judicial system. Such individual actions will also magnify the expense for retaining expert witnesses, prolong an individual's ability to receive adequate medical

care and medical monitoring for the injuries caused by medications containing PPA, and prolong the emotional stress for past users of medications containing PPA.

26.

Furthermore, class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications and substantially impair their ability to protect their interests.

27.

Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(3)and/or (b)(1)(B), and the class action vehicle is the superior method for handling this litigation.

28.

Complainants are entitled to and pray for trial by jury on all issues.

WHEREFORE, complainants, individually and on behalf of all those similarly situated members of the proposed class, prays:

(1) that defendants be served with a copy of the complaint and be cited to appear and answer same;

(2) for an order certifying the class and any appropriate subclasses thereof under the appropriate provisions of Federal Rules of Civil Procedure, Rule 23, and appointing complainants and their counsel to represent the Class;

(3) after due proceedings are had, including trial by jury, that judgment be rendered in favor of complainant and the class and against defendants in an amount to compensate the complainant and each member of the class for all damages including exemplary damages if applicable to which they are entitled by law;

(4)   for legal interest on all damages awarded from date of judicial demand until paid;

(5)   for the costs of this litigation; and

(6)   for such other and further damages and relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED:

_____
JONATHAN B. ANDRY (#20081)
LIONEL H. SUTTON, III (#20386)
610 BARONNE STREET
NEW ORLEANS, LOUISIANA 70113
(504) 586-8899

REBECCA A. CUNARD (#20154)
9214 INTERLINE AVENUE
BATON ROUGE, LOUISIANA 70809
(225) 925-2978

-12-